# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00187-CV

**Latisha McFadden, Appellant**

**v.**

**Greg Oleskey, Rogelio Sanchez, Tamara Joseph, and Michael Pollard, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT**
**NO. D-1-GN-04-001222, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING**

## O P I N I O N

Appellant Latisha McFadden, after being found not guilty on a criminal charge of assault on a police officer, filed suit against appellees Rogelio Sanchez, Greg Oleskey, Tamara Joseph, and Michael Pollard—the four police officers who procured her arrest. The district court granted appellees' plea to the jurisdiction and motion for summary judgment, and entered a take nothing judgment against McFadden. We affirm the judgment of the district court with respect to McFadden's assault and false imprisonment claims, based on limitations. However, we conclude that McFadden's malicious prosecution claim could not have been brought under the Texas Tort Claims Act against the governmental unit that employs appellees and, therefore, Texas Civil Practice and Remedies Code section 101.106(f) does not require the lawsuit to be dismissed. We reverse the judgment of the district court with respect to McFadden's claims of

malicious prosecution and conspiracy to commit malicious prosecution, and remand for further proceedings consistent with this opinion.

### *Factual and Procedural Background*

Latisha McFadden was arrested around 3 a.m. on July 14, 2000, for disregarding a police officer's lawful order, *see* Tex. Transp. Code Ann. § 542.501 (West Supp. 2009), and was subsequently charged with assault on a public servant, *see* Tex. Penal Code Ann. § 22.01(a)(1), (b)(1) (West Supp. 2009). Rogelio Sanchez, Greg Oleskey, Tamara Joseph, and Michael Pollard are the Austin Police Department officers who restrained McFadden to make the arrest.

The parties' descriptions of the events surrounding McFadden's arrest differ. According to McFadden, she and her friend Sonya Bolden were on Sixth Street in downtown Austin returning to her car after the club they had gone to closed for the night. When a man she did not know attacked her verbally from a long distance away, she responded in a tone she says was appropriate. A police officer rode up on his bicycle, said nothing to the man, and allegedly said to McFadden "something like Bitch shut your fucking ass up and leave." McFadden then "shot the finger" at the unidentified man while he was leaving. McFadden alleges the police officer then jumped off his bike, grabbed McFadden's left arm, and twisted it behind her back. When McFadden asked for an explanation, another officer walked up behind her and sprayed her with pepper spray. The officers then took her feet out from under her, pulled her hair, kicked and hit her on her head and side, and dragged her, all despite the fact that she was not physically resisting arrest. As she was screaming in pain, she claims the police officers were laughing. McFadden's friend

2

Bolden gave a similar account, adding that "it appeared to me that one of the officers ran his arm up under Latisha's shorts."

According to appellees, Officer Sanchez observed a verbal disturbance between McFadden and a man on Sixth Street, and McFadden was being verbally and physically aggressive toward the man. A large group had gathered, watching the disturbance. When Sanchez ordered both of them to leave, the man complied but McFadden did not. Instead, she continued to use profane language and gestures and stated she would leave "when she was ready." Sanchez decided to arrest McFadden for disregarding his order to leave. At this point, Officer Oleskey arrived, and when both officers attempted to handcuff her, she pulled her arms away and pushed and kicked at the officers. As she continued to resist (according to the officers), Oleskey grabbed her by the hair and took her to the ground. Once on the ground, McFadden kicked Oleskey with her high heel shoes, causing a two-inch cut, and pulled his bike helmet off his head and scratched his face, causing several cuts. Officers Joseph and Pollard had arrived by this point. As Joseph joined the attempt to restrain McFadden, McFadden kicked her repeatedly. Officer Pollard peppersprayed McFadden, and the four officers were able to place her in handcuffs and her legs in flex-cuffs.

Following a criminal trial, the jury found McFadden not guilty of assault, and the court entered judgment on the jury's verdict. On April 20, 2004, McFadden filed this lawsuit against appellees, asserting claims of assault, false imprisonment, malicious prosecution, and conspiracy to commit malicious prosecution. Appellees filed a plea to the jurisdiction and motion for summary judgment. On March 4, 2009, the district court granted appellees' plea and motion and entered a take nothing judgment against McFadden. McFadden appeals.

3

*Standard of Review*

We review summary judgments de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We also review the granting of a plea to the jurisdiction de novo. Whether a court has subject-matter jurisdiction and whether a plaintiff has alleged facts that affirmatively demonstrate subject-matter jurisdiction are questions of law that we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

*Assault and False Imprisonment Claims*

McFadden asserts assault and false imprisonment claims against appellees. In their motion for summary judgment, appellees argued that such claims are barred by limitations. Assault and false imprisonment claims are governed by a two-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West Supp. 2009); *Patrick v. Howard*, 904 S.W.2d 941, 943 (Tex. App.—Austin 1995, no writ). There is no dispute that the events on which McFadden's claims are based occurred in July 2000 and that she filed suit in April 2004.

McFadden argues, however, that based on *Heck v. Humphrey* limitations on her claims did not begin to run until the criminal proceedings against her were final. In *Heck*, the Supreme Court held that a federal section 1983 cause of action for damages that is attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated. *See* 512 U.S. 477, 489-90 (1994). The Court found such a cause of action analogous to the common-law cause of action for malicious prosecution, an element of which is that the prior criminal proceeding was terminated in favor of the plaintiff. *See id.* at 484. McFadden contends that because her assault and false imprisonment claims could impact or be impacted by the

disposition of the criminal case, the applicable statute of limitations cannot run until the criminal matter is resolved.

However, the Supreme Court has spoken to this issue. In *Wallace v. Kato*, the Court held that limitations for a section 1983 claim based on false arrest or false imprisonment begins to run when the alleged false imprisonment ends. *See* 549 U.S. 384, 389-92 (2007). The plaintiff in *Wallace* contended that, under *Heck*, his suit did not accrue until the State had dropped its charges against him. *See id.* at 392. The Court rejected the plaintiff's contention and held that the *Heck* rule was limited to circumstances in which a conviction or sentence existed and had not yet been invalidated. *See id.* at 392-93. In this case, as in *Wallace*, no conviction or sentence was ever imposed against McFadden, and therefore, the Supreme Court's decision in *Heck* has no effect on the applicable statute of limitations.[1]

McFadden also argues that the limitations period should be tolled during the criminal proceedings based on *Hughes v. Mahaney & Higgins*. 821 S.W.2d 154 (Tex. 1991). The Texas Supreme Court in *Hughes* held that for a cause of action for legal malpractice allegedly committed by an attorney while providing legal services in the prosecution or defense of a claim that results in litigation, the limitations period is tolled until all appeals on the underlying claim are

---

[1] McFadden raises two additional concerns in her brief, both of which were addressed by the Court in *Wallace*. McFadden contends that the State could have used discovery in the civil action against her in the criminal case. The Court observed in *Wallace* that "it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007). McFadden also contends that she was unable to pay for the handling of both the civil and criminal cases at the same time. In *Wallace*, the Court rejected the rationale that a criminal defendant should not have to divide her attention between criminal and civil cases. *See id.* at 396.

5

exhausted. *See id.* at 156-57; *see also Golden v. McNeal*, 78 S.W.3d 488, 494 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (applying *Hughes* to claim of malpractice in criminal case). However, this holding was based on the court's concern that the malpractice plaintiff could be forced into "adopting inherently inconsistent litigation postures" in the two cases. *See Hughes*, 821 S.W.2d at 156. McFadden has identified no inconsistent position in her criminal defense and her allegations in support of her assault and false imprisonment claims. We decline to extend the holding of *Hughes* to these types of claims.

McFadden filed suit more than two years after her assault and false imprisonment claims accrued, and she does not identify any tolling rule applicable to her claims. Therefore, those claims are barred by limitations. We affirm the district court's order granting appellees' motion for summary judgment with respect to McFadden's claims of assault and false imprisonment.

***Malicious Prosecution and Conspiracy Claims***

McFadden asserts malicious prosecution and conspiracy claims against appellees. Appellees argue that the district court's take nothing judgment on McFadden's malicious prosecution claim can be affirmed on three independent bases: (1) appellees are entitled to the affirmative defense of official immunity as a matter of law; (2) appellees must be dismissed as defendants in accordance with subsections (a) and (f) of civil practice and remedies code section 101.106; and (3) there is no evidence to support some of the elements of a malicious prosecution claim.

6

Moreover, whether McFadden can proceed on her conspiracy claim depends on whether she can proceed on her underlying malicious prosecution claim.[2]

*Rule 11 Agreement*

On March 12, 2008, appellees filed a plea to the jurisdiction and motion for summary judgment. Over the next week, both parties sought continuances. McFadden filed a motion to continue the hearing on appellees' plea to the jurisdiction, and appellees filed a motion to continue the trial setting. On March 20, 2008, McFadden filed with the district court the parties' signed Rule 11 agreement, under which both the hearing and the trial setting were continued, and which provided as follows:

> The Defendant will not file any additional dispositive motions and will only go forward on the pending Motion for Summary Judgment on the issue of the statute of limitations defense. Also, Defendant will go forward on its pending Plea to the Jurisdiction.

Despite this provision of the agreement, on June 2, 2008, appellees filed a "Second Plea to the Jurisdiction and Motion for Summary Judgment."

The parties' Rule 11 agreement is in writing, signed, and filed as part of the record. Thus, under Texas Rule of Civil Procedure 11, it is enforceable. *See* Tex. R. Civ. P. 11. The district court had a duty to enforce its terms. *See Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651

---

[2] McFadden's conspiracy claim is premised on the underlying tort of malicious prosecution. Thus, if McFadden's malicious prosecution claim fails as a matter of law, her conspiracy claim fails as a matter of law as well. *See Ernst & Young v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 (Tex. 2001). Also, appellees do not independently attack the conspiracy claim. Thus, if McFadden's malicious prosecution claim survives, her conspiracy claim survives as well.

7

(Tex. 2007). Therefore, the district court should not have considered the second plea and motion for summary judgment filed. *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 91 (Tex. 1996).

Appellees fail to provide sufficient reason not to enforce the Rule 11 agreement to which they agreed. First, appellees contend that they were not prohibited from filing amended versions of the existing motions. This does not comport with the Rule 11 agreement's language. Appellees agreed to proceed only on their "pending" motions. At the time the agreement was entered into, the "second" motion, filed in June 2008, was not pending. Next, appellees contend they had a right to revoke their consent to the Rule 11 agreement before judgment was rendered. *See ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 309 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). While this may be true, appellees did not do so. There is no indication in the record that appellees revoked the agreement. In her response to appellees' plea and motion for summary judgment, McFadden argued that appellees' second motion should be disregarded. In their reply, appellees did not rebut McFadden's argument and, in fact, admitted that "Defendants agreed to and will address only the statute of limitations argument made in its summary judgment motion." Appellees next contend that McFadden waived her right to enforce the Rule 11 agreement by filing an additional motion for continuance in August 2008. However, appellees do not explain why such action constitutes a waiver. Under the agreement, the parties agreed that "as soon as possible, probably in June or August, they will set the case for trial again." There is no conflict between this provision and McFadden's request for continuance. Lastly, appellees contend that they had a right to respond to the conspiracy claim, which was asserted for the first time in McFadden's amended petition, filed on August 22, 2008. Even it this is true, however, appellees' second motion

8

was filed before the amended petition and, therefore, was not an assertion of any right to respond to McFadden's conspiracy claim.

The district court should have considered the March 2008 plea and motion for summary judgment, but not the June 2008 plea and motion for summary judgment.[3] Having so concluded, we must determine which bases for judgment on the malicious prosecution claim survive.

Appellees argued that, as police officers acting within the scope of their authority, they were entitled to official immunity with respect to McFadden's malicious prosecution claim. However, this argument was made only in appellees' motion for summary judgment, and appellees agreed to go forward on that motion only on their statute of limitations defense. Therefore, summary judgment on the malicious prosecution claim was not appropriate on the basis of official immunity per the Rule 11 agreement.

In their plea to the jurisdiction, appellees argued that they must be dismissed from the lawsuit in accordance with section 101.106 of the Texas Civil Practice and Remedies Code. McFadden contends that section 101.106 cannot be applied with respect to her malicious prosecution claim because the March 2008 plea does not specifically identify this claim in the context of section 101.106. We disagree. In their March 2008 plea, appellees did not expressly restrict their section 101.106 arguments to specific claims. Instead, they broadly referred to McFadden's "claims in her lawsuit," and also specifically referred to McFadden's "intentional tort claims." However, we agree with McFadden that appellees cannot rely on subsection (a) of section 101.106. In the

---

[3] In addition, appellees filed various motions to dismiss, none of which appellees were to pursue pursuant to the Rule 11 agreement.

March 2008 plea, appellees relied on subsection (f), not subsection (a). These subsections provide independent bases for dismissal. Subsection (a) requires dismissal of the employee if the plaintiff first sued the governmental unit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a) (West 2005). Subsection (f) requires dismissal of the employee when the plaintiff sues only the employee but should have sued the governmental unit instead. *See id.* § 101.106(f). Therefore, dismissal of the malicious prosecution claim was not appropriate on the basis of civil practice and remedies code section 101.106(a).[4]

Finally, we conclude that appellees' argument that there is no evidence to support some of the elements of McFadden's malicious prosecution claim remains at issue. Such basis for dismissal was fully set out in appellees' March 2008 plea to the jurisdiction.

*Texas Civil Practice and Remedies Code Section 101.106(f)*

Chapter 101 of the civil practice and remedies code is the Texas Tort Claims Act. *See id.* § 101.002 (West 2005). The Tort Claims Act establishes the extent of a governmental unit's potential tort liability. Section 101.106 prohibits a plaintiff from asserting a tort claim against both a governmental unit and its employees:

---

[4] Before filing this suit against appellees, McFadden sued their employing governmental unit, the City of Austin, in federal court. Section 101.106(a) provides that the filing of a suit under the Texas Tort Claims Act against a governmental unit "immediately and forever bars" any suit by the plaintiff against an individual employee of the governmental unit regarding the same subject matter. Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a) (West 2005). Having concluded that section 101.106(a) is not at issue, we do not consider whether McFadden's federal suit constituted a suit under the Tort Claims Act regarding the same subject matter as this suit.

10

(a)  The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.

(b)  The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.

. . . .

(e)  If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

(f)  If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.  On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

*Id.* § 101.106.  Appellees contend that McFadden's malicious prosecution claim must be dismissed under section 101.106(f), because appellees filed a motion alleging that (1) their conduct was within the general scope of their employment and (2) the claim "could have been brought" under the Tort Claims Act against the governmental unit.  *See id.* § 101.106(f).

McFadden argues that appellees were not acting within the general scope of their employment.  "An official acts within the scope of her authority if she is discharging the duties generally assigned to her."  *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994).  Appellees were on duty, were attempting to maintain the peace, and took actions to arrest McFadden when they determined that she had refused to comply with a police officer's order.  *See Texas Dep't*

11

*of Pub. Safety v. Perez*, 905 S.W.2d 695, 697-98, 700 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (holding that officer was acting within scope of authority notwithstanding plaintiff's allegation that handcuffs were unnecessarily tight). McFadden relies on two cases for her argument, but each case involved situations in which it was not clear that the employee was discharging his assigned duties. *See Kelemen v. Elliott*, 260 S.W.3d 518, 520, 524 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (finding no evidence that officer was acting in scope of employment when he kissed fellow officer without consent while on duty); *Wallace v. Moberly*, 947 S.W.2d 273, 276-77 (Tex. App.—Fort Worth 1997, no writ) (finding issue of fact on whether off-duty game warden who pulled gun on teenagers cutting in fast food restaurant's drive-through line was acting within scope of authority). We conclude that appellees' conduct was within the general scope of their employment.

Next, we consider whether McFadden's malicious prosecution claim "could have been brought under this chapter against the governmental unit." *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). Appellees contend that such language incorporates any tort theory, regardless of whether the Tort Claims Act waives a governmental unit's immunity with respect to the claim. Prior to 2008, courts of appeals generally rejected this contention, concluding that section 101.106(f)'s language requires the governmental employee to prove that the plaintiff's claim falls within the Tort Claims Act's waiver of sovereign immunity. *See Reedy v. Pompa*, 310 S.W.3d 112, 117 (Tex. App.—Corpus Christi 2010, pet. filed). However, we must consider the impact of the Texas Supreme Court's decision in *Mission Consolidated Independent School District v. Garcia*, 253 S.W.3d 653 (Tex. 2008).

12

In *Garcia*, the supreme court construed the phrase "under this chapter" in section 101.106(e). *See* 253 S.W.3d at 658-59. The court concluded that "[b]ecause the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the Tort Claims Act]' for purposes of section 101.106." *Id.* at 659. The plaintiff in *Garcia* had asserted tort claims against both the school district and its superintendent. *See id.* at 654-55. According to the supreme court, regardless of whether the school district's immunity against such claims was waived under the Tort Claims Act, a motion under section 101.106(e) would result in the superintendent's dismissal from the lawsuit. *See id.* at 659.

Appellees acknowledge that a malicious prosecution claim is an intentional tort and, therefore, the City of Austin has sovereign immunity against such a claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (West 2005). Nonetheless, appellees contend that because McFadden is alleging a tort theory, in accordance with *Garcia* the malicious prosecution claim "could have been brought" against the City in accordance with the language of section 101.106(f).

Based on the plain language of section 101.106(f), we disagree with appellees' statutory construction. The supreme court in *Garcia* was construing the phrase "under this chapter," not the phrase "could have been brought under this chapter." *See* 253 S.W.3d at 658-60. In fact, the supreme court observed that section 101.106(f) "contains a slightly different phrase," and expressly declined to address the interpretation of that phrase. *See id.* at 660 n.5. While an intentional tort may be governed by the Tort Claims Act, and thus be "under" the Tort Claims Act, such cause of

13

action could not be brought in accordance with the Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2). The phrase "could have been brought" invokes the Tort Claims Act's limited waiver of immunity. We do not construe section 101.106(f) such that a tort claim that cannot be brought under the Tort Claims Act nonetheless "could have been brought" under the Tort Claims Act.

Our conclusion is consistent with the language of the entire subsection. Subsection (f) authorizes the plaintiff to file amended pleadings naming the governmental unit as defendant. *See id.* § 101.106(f). Such filing acts as an exception to subsection (b)'s bar of any suit or recovery by the plaintiff against the governmental unit. *See Bailey v. Sanders*, 261 S.W.3d 153, 158 (Tex. App.—San Antonio 2008, no pet.). Authorizing a plaintiff to sue a governmental unit in one section of the Tort Claims Act when such claim could then be dismissed based on sovereign immunity under another section of the Tort Claims Act would be a meaningless exercise. *See Menefee v. Medlen*, ___ S.W.3d ___, No. 02-09-00440-CV, 2010 Tex. App. LEXIS 4892, at *16-18 (Tex. App.—Fort Worth June 24, 2010, no pet. h.). The more reasonable construction of subsection (f), then, is that when the employee is the named defendant, but the Tort Claims Act waives immunity for that type of claim when asserted against the governmental unit, the employee can be dismissed and the governmental unit can be added as a defendant in his place.

Our conclusion is also consistent with the purpose of section 101.106. According to the court in *Garcia*, the purpose of section 101.106 is to require the plaintiff to choose among her available theories of recovery at the outset. *See* 253 S.W.3d at 657.

14

> By requiring a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the Tort Claims Act or proceeding against the employee alone, section 101.106 narrows the issues for trial and reduces delay and duplicative litigation costs. . . . [T]he Legislature intended to reduce the delay and expense associated with allowing plaintiffs to plead alternatively that the governmental unit is liable because its employee acted within the scope of his or her authority but, if not, that the employee acted independently and is individually liable.

*Id.* Under section 101.106, a plaintiff can only choose one class of defendants—the governmental unit or its employees—and that choice is irrevocable. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a), (b). Even attempting to sue both classes is a choice between defendants. *See id.* § 101.106(e). Because the choice is irrevocable, the plaintiff must "proceed cautiously." *See Garcia*, 253 S.W.3d at 657. If the wrong choice is made, the plaintiff may be left with no cause of action.[5] However, while section 101.106 ensures that the plaintiff can pursue only one option, appellees' position would result in section 101.106 removing the only available option. Under appellees' position, section 101.106(f) would result in plaintiffs no longer having a claim in the event a governmental employee, acting within the general scope of his employment, committed an intentional tort. Such a result finds no support in the purpose of section 101.106 identified in *Garcia*. Section 101.106 is intended to make the plaintiff choose between options. It is not intended to remove an option when it is the only one available.

---

[5] For instance, if a suit can be alleged against the employee but not the governmental unit, the plaintiff would lose her cause of action if she filed against the governmental unit alone, *see id.* § 101.106(a), or against both the governmental unit and the employee, *see id.* § 101.106(e). In addition, if the plaintiff files suit against the employee, and the employee files a motion under section 101.106(f), the plaintiff will lose her cause of action if she does not timely amend and the trial court determines that the requirements of section 101.106(f) apply. *See id.* § 101.106(b), (f).

We recognize that there is a split among the courts of appeals on this issue.[6] Based on the plain language of section 101.106(f), and consistent with the purpose of section 101.106 as stated by the supreme court in *Garcia*, we agree with those courts that have concluded the phrase "could have been brought" means that the Tort Claims Act waives immunity for the claim at issue. Therefore, the district court erred to the extent it dismissed McFadden's malicious prosecution claim based on civil practice and remedies code section 101.106(f).[7]

*Evidence in Support of Malicious Prosecution Claim*

A claim for malicious prosecution requires the plaintiff to prove that (1) a criminal prosecution was commenced against her, (2) the defendants initiated or procured the prosecution, (3) the prosecution terminated in her favor, (4) she is innocent of the charges, (5) the defendants lacked probable cause to initiate the prosecution, (6) the defendants acted with malice, and (7) she suffered damages. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 792 n.3 (Tex. 2006).

---

[6] *Compare Menefee v. Medlen*, ___ S.W.3d ___, No. 02-09-00440-CV, 2010 Tex. App. LEXIS 4892, at *21 (Tex. App.—Fort Worth June 24, 2010, no pet. h.) (holding that subsection (f) requires employee to prove that plaintiff's claims fall within the Tort Claims Act's limited waiver of sovereign immunity), *Reedy v. Pompa*, 310 S.W.3d 112, 119 (Tex. App.—Corpus Christi 2010, pet. filed) (same), *Lieberman v. Romero*, No. 05-08-01636-CV, 2009 Tex. App. LEXIS 8414, at *5 (Tex. App.—Dallas Nov. 3, 2009, pet. filed) (mem. op.) (same), *and Leonard v. Glenn*, 293 S.W.3d 669, 681-82 (Tex. App.—San Antonio 2009, pet. filed) (same), *with Castro v. McNabb*, ___ S.W.3d ___, No. 08-07-00074-CV, 2009 Tex. App. LEXIS 8262, at *20 (Tex. App.—El Paso Oct. 28, 2009, no pet.) (holding that all tort claims satisfy subsection (f)'s "could have been brought" language), *and Kelemen v. Elliott*, 260 S.W.3d 518, 524 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (same).

[7] Having concluded that section 101.106(f) did not require the dismissal of appellees from McFadden's lawsuit, we need not address McFadden's argument that section 101.106(f) violates the open courts provision of the Texas Constitution. *See* Tex. Const. art. I, § 13.

16

Appellees argue that there is no evidence that they initiated or procured the prosecution, that McFadden is innocent, that they lacked probable cause, or that they acted with malice.[8]

A plaintiff may defeat a no-evidence motion for summary judgment by producing more than a scintilla of evidence establishing the existence of each challenged element. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair minded people to differ in their conclusions. *Id.* at 601.

Regarding the challenged elements of McFadden's malicious prosecution claim, appellees rely mostly on their contention that McFadden's account of her arrest is self-serving and unsupported, while appellees' accounts are consistent and, therefore, true. However, in reviewing a motion for summary judgment, we accept as true all evidence favorable to the non-movant, making every reasonable inference and resolving all doubts in the non-movant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). A fact-finder who resolves the factual disputes in favor of McFadden's version of events could reasonably conclude that McFadden was innocent of the charges and that appellees lacked probable cause and acted with malice.

As to the remaining element of McFadden's malicious prosecution claim at issue, appellees contend that they did not initiate or procure the prosecution.

> A person procures a criminal prosecution if his actions were enough to cause the prosecution, and but for his actions the prosecution would not have occurred. A person does not procure a criminal prosecution when the decision whether to

---

[8] While appellees' argument is in the nature of a request for summary judgment, it was argued as part of their plea to the jurisdiction. Thus, the argument survives the Rule 11 agreement.

prosecute is left to the discretion of another, including a law enforcement official or the grand jury, unless the person provides information which he knows is false. A criminal prosecution may be procured by more than one person.

*Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 293 (Tex. 1994). Appellees allege that the decision whether to prosecute McFadden was left to the discretion of another. However, such allegation does not impair McFadden's claim if appellees provided information that they knew was false. *See id.* A fact-finder who resolves the factual disputes in favor of McFadden's version of events could reasonably conclude that appellees provided information that they knew was false. Appellees also allege that the decision to prosecute would have been made even without their descriptions of McFadden's actions. However, we may infer causation when the only information relied on in deciding to prosecute came from the defendants. *See King v. Graham*, 126 S.W.3d 75, 79 (Tex. 2003). The affidavit of warrant or arrest and detention states that information was provided by Sanchez, Oleskey, and Joseph, and there is evidence in the record that Sanchez, Oleskey, and Pollard testified on behalf of the State at McFadden's criminal trial. Appellees do not identify any source of information used to prosecute McFadden other than themselves. Therefore, there is more than a scintilla of evidence that appellees procured McFadden's prosecution.

Having rejected each of appellees' arguments in opposition to McFadden's malicious prosecution claim, we conclude that the district court erred in entering a take nothing judgment against McFadden with respect to her malicious prosecution and conspiracy claims.[9]

---

[9] In her final point on appeal, McFadden complains that the district court erred in denying her motion for continuance when appellees filed a supplemental plea to the jurisdiction less than twenty-one days before the hearing on appellees' plea and motion for summary judgment. We need not address McFadden's complaint because we reverse the district court's judgment with respect to

18

*Conclusion*

We conclude that the district court correctly granted appellees' motion for summary judgment with respect to McFadden's claims of assault and false imprisonment. However, we conclude that the district court erred in granting appellees' plea to the jurisdiction. Therefore, we affirm the judgment of the district court with respect to McFadden's assault and false imprisonment claims, but we reverse the judgment of the district court with respect to her claims of malicious prosecution and conspiracy to commit malicious prosecution, and we remand for further proceedings consistent with this opinion.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed in part; Reversed and Remanded in part

Filed:   August 19, 2010

---

her malicious prosecution and conspiracy claims, and our affirmance of the judgment with respect to her assault and false imprisonment claims is based on appellees' motion for summary judgment, not their plea to the jurisdiction.

19